Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| *QUQUYE, INC. Y OTROS*<br><br>*Recurrido*<br><br><br>v.<br><br><br>FRANCISCO ALEJANDRO CRUZ SOTO H/N/C ARTESANOS CAFÉ LOS 3 CUERNOS Y/O 3 CUERNOS Y OTROS<br><br>*Peticionario* | TA2026CE00145<br><br>consolidado con<br><br><br>TA2026CE00146[1] | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV05270<br><br>Sobre:<br>Cobro de Dinero-Ordinario |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

### RESOLUCIÓN

En San Juan, Puerto Rico, a 18 de febrero de 2026.

Comparece ante nos Francisco Alejandro Cruz Soto, H/N/C, Artesanos café, Los 3 Cuernos y/o 3 Cuernos y Romero Cruz Incorporated (señor Cruz Soto o peticionario) mediante los recursos de *Certiorari* **TA2026CE00145** y **TA2026CE00146**[1], así como las *Mociones en Auxilio de Jurisdicción* presentadas en cada uno de los casos.

Examinadas ambas solicitudes, se declaran ***No Ha Lugar***.

En cuanto al recurso **TA2026CE00145**, el peticionario recurre de la *Orden* emitida por el TPI el 29 de enero de 2026, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro recurrido). En la cual el TPI declaró "Sin Lugar" la *Moción al Amparo de la Regla 47 de Procedimiento Civil [Entradas Núm. 243 y 247].*

En síntesis, el estado procesal en controversia se origina cuando el 29 de diciembre de 2025, Ququye Inc. y Nykaulys Cruz

---

[1] Se ordena la consolidación de los recursos de epígrafe, en atención a que en estos se recurre de dictámenes emitidos en un mismo caso.

Soto (recurridos) presentaron una *Moción Solicitando Sentencia Sumaria*. El 7 de enero de 2026, el foro recurrido le concedió al peticionario hasta el 19 de enero de 2026 para exponer su postura. El 20 de enero de 2026, a un día de haber expirado el término concedido por el TPI, el señor Cruz Soto presentó *Moción al Amparo de la Regla 36.6 de Procedimiento Civil*. En esta adujo que el descubrimiento de prueba no había finalizado, por lo cual solicitó posponer la consideración de la *Moción Solicitando Sentencia Sumaria*. El 21 de enero de 2026, el recurrido se opuso y el 26 de enero de 2026, el TPI declaró *Sin Lugar* el petitorio del peticionario y, como corolario de lo anterior, dio por sometida la *Moción Solicitando Sentencia Sumaria*. Así las cosas, el 26 de enero de 2026, el peticionario presentó la *Moción al Amparo de la Regla 47 de Procedimiento Civil [Entradas Núm. 243 y 247]*, en la cual solicitó que el foro recurrido reconsidere y deje sin efecto la *Orden* aquí impugnada, en la cual declaró sin lugar la *Moción al Amparo de la Regla 36.6 de las de Procedimiento Civil*, o en la alternativa, permita a dicha parte oponerse a la *Moción Solicitando Sentencia Sumaria*. El TPI declaró la misma *No Ha Lugar*.

Insatisfecho aun, el 8 de febrero de 2026, el señor Cruz Soto acudió a este foro intermedio y le imputó al foro recurrido los siguientes señalamientos de error:

> ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN AL DENEGAR LA MOCIÓN PRESENTADA POR LA PETICIONARIA AL AMPARO DE LA REGLA 36.6 DE PROCEDIMIENTO CIVIL, A PESAR DE QUE EL EXPEDIENTE DEL CASO DEMOSTRABA QUE EL DESCUBRIMIENTO DE PRUEBA ESENCIAL NO HABÍA CONCLUIDO POR CAUSAS NO IMPUTABLES A SU DILIGENCIA, PRIVÁNDOLA ASÍ DEL REMEDIO PROCESAL DISEÑADO PARA EVITAR LA ADJUDICACIÓN DE UNA SENTENCIA SUMARIA SOBRE UN EXPEDIENTE INCOMPLETO, EN CONTRAVENCIÓN AL TEXTO EXPRESO DE DICHA REGLA Y AL DEBIDO PROCESO DE LEY.

> ERRÓ EL TPI Y COMETIÓ UN ERROR CRASO DE DERECHO AL DAR POR SOMETIDA LA MOCIÓN DE SENTENCIA SUMARIA SIN CONTAR CON LA OPOSICIÓN SUSTANTIVA DE LA PETICIONARIA, AUN CUANDO ESTA HABÍA INFORMADO OPORTUNAMENTE SU IMPOSIBILIDAD DE PRESENTAR HECHOS ESENCIALES Y HABÍA SOLICITADO

PROTECCIÓN BAJO LA REGLA 36.6 DE PROCEDIMIENTO CIVIL, LO QUE EN LA PRÁCTICA EQUIVALIÓ A ADJUDICAR UN MECANISMO DISPOSITIVO SIN ESCUCHAR A UNA DE LAS PARTES, VULNERANDO SU DERECHO FUNDAMENTAL A SER OÍDA Y AL DEBIDO PROCESO DE LEY.

El 13 de febrero de 2026, el recurrido presentó una *Oposición a que se Expida Auto de Certiorari y en Oposición a Moción de Auxilio de Jurisdicción.* Esbozó que los recursos presentados no cumplen con ninguna de las situaciones de la Regla 52.1 de Procedimiento Civil[2], ni con los criterios de la Regla 40 del Tribunal de Apelaciones[3]. Además, el peticionario no recurrió de la orden que denegó la extensión del descubrimiento de prueba[4].

En cuanto al recurso **TA2026CE00146**, el peticionario requiere la revisión de una *Orden*[5] emitida el 29 de enero de 2026[6]. En la misma, el TPI declaró *Sin Lugar* la *Moción al Amparo de la Regla 47 de Procedimiento Civil [Entrada Núm. 228]*[7] presentada por el señor Cruz Soto.

El 6 de octubre de 2025[8], el foro recurrido celebró una vista al amparo de la Regla 56 de Procedimiento Civil[9] para atender la solicitud de remedios provisionales presentada por el recurrido, en un caso, cuya controversia principal versa sobre la titularidad y control de la corporación Ququye, Inc. (Ququeye o recurrido). Celebrada la vista, el 12 de enero de 2026, el TPI emitió y notificó una *Resolución*[10] en la cual formuló las siguientes determinaciones de hechos:

1. La Sra. Brenda Nykaulys Soto Martínez (en adelante, Sra. Soto Martínez) es la madre de Nykaulys Cruz Soto (en

---

[2] Regla 52.1 de las Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V., R. 52.1.
[3] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, pág. 63, 216 DPR __ (2025).
[4] Entrada #229 SUMAC TPI: **Orden 12 de enero de 2026 en donde el TPI dictaminó:** *Desde la orden del 9 de junio de 2025-entrada número [103] de SUMAC-se calendarizó la fecha límite del descubrimiento de prueba. Dicha fecha es de cumplimiento estricto. Tampoco se ha colocado en posición a este tribunal para que autorice aplazar la fecha límite. El descubrimiento de prueba terminó el 28 de noviembre de 2025.*
[5] Anejo 259 del recurso de *Certiorari*.
[6] Notificada el 30 de enero de 2026.
[7] Anejo 250 del recurso de *Certiorari*.
[8] Véase, entrada 192 del expediente del Tribunal de Primera Instancia (TPI).
[9] 32 LPRA Ap. V, R. 56.
[10] Anejo 228 del recurso de *Certiorari*.

adelante, Sra. Cruz Soto) y de Francisco Alejandro Cruz Soto (en adelante, el Sr. Cruz Soto).

2. La Sra. Soto Martínez trabajaba como artista plástica para el año 2020.

3. La Sra. Soto Martínez tuvo su galería en el hotel La Concha, en el Condado y en el Viejo San Juan. La galería/taller se llamaba Cocuyo.

4. El nombre tres cuernos surge cuando la Sra. Soto Martínez se mudó a San Juan, ya que deseaba establecer en la galería una pequeña barrita como las que había observado que tenían galerías en Nuevo México. En Nuevo México las galerías vendían tequila. La Sra. Soto Martínez decidió vender algo típico que no fuera piña colado. Por tanto, comenzó a vender chichaitos.

5. La Sra. Soto Martínez creó recetas para el chichaito, colocándole sabores.

6. La Sra. Soto Martínez creó el nombre Los 3 Cuernos.

7. La Sra. Soto Martínez creó la corporación Martínez Reina el 11 de octubre de 2013 cuando decidió mudar sus operaciones a la calle Fortaleza en el Viejo San Juan. La persona que fungió como incorporador lo fue el Sr. Cruz Soto. El Sr. Cruz Soto trabajaba para la Sra. Soto Martínez.

8. La Sra. Soto Martínez era la dueña de la corporación Martínez Reina.

9. La Sra. Soto Martínez, por inconvenientes en la localización de Martínez Reina, comenzó a hacer gestiones para mudar sus operaciones. Así las, cosas identificó una propiedad en el #359 de la calle San Francisco en el viejo San Juan. Como resultado de sus gestiones, logró acordar un contrato de arrendamiento con opción a compra. Esta propiedad le pertenecía a la Iglesia católica, pero esta no tenía título. El pago de renta se dividía en una mitad para pagar el arrendamiento y la otra mitad para abonar al precio de venta de la propiedad. El acuerdo se mantendría de esta manera hasta que la iglesia tuviera el título y pudiera vender la propiedad. La Sra. Soto Martínez incurrió en gastos para arreglar la propiedad y también gestionó, por conducto de un contable, la creación de una nueva corporación, ya que no le gustó como su hijo (el Sr. Cruz Soto) había manejado la corporación Martínez Reina.

10. La propiedad inmueble (edifico) le pertenecía a la Iglesia Católica, Apostólica y Romana en Puerto Rico (Arquidiócesis de San Juan) y luego fue adquirida por la corporación Ququye, Inc. A instancias de la Sra. Soto Martínez, la Sra. Cuz Soto tuvo injerencia en la corporación, por entender que esta era más organizada, tenía mejor crédito y "no le iba a hipotecar el negocio con alguna locura".

11. La Sra. Cruz Soto es la presidenta de Ququye, Inc. El Sr. Cruz Soto era el encargado de administrarla y de trabajar en ella. El Sr Cruz Soto recibía un salario de Ququye, Inc como empleado. El Sr. Cruz Soto no pertenecía a la junta de directores.

12. La Sra. Soto Martínez indicó que la Sra. Cruz Soto es la dueña de Ququye, Inc., toda vez que ella quiso que así fuera debido a que no confiaba dejar como dueño al Sr. Cruz Soto.

13. Luego de la creación de Ququye, Inc., la Sra. Soto Martínez estuvo administrando todo el negocio hasta que su madre falleció.

14. La propiedad ubicada en el #359 de la calle San Francisco se compró mediante escritura pública. La Sra. Cruz Soto fue quien hizo la aportación para comprar la propiedad.

15. El Sr. Cruz Soto siempre trabajo para los negocios de la Sra. Soto Martínez y se le pagaba un sueldo.

16. La Sra. Cruz Soto nació el 19 de septiembre de 1989. La Sra. Cuz Soto expresó ser la dueña de Ququye, Inc. desde el año 2018.

17. Ququye, Inc. se creó para establecer el negocio Los 3 Cuernos en la calle San Francisco y para adquirir un bien inmueble en el #359 de la calle San Francisco en el Viejo San Juan.

18. Para el año 2018, el negocio Los 3 Cuernos lo operaba la Sra. Soto Martínez y la Sra. Cruz Soto proveía fondos. También para este año, el edificio ubicado en el #359 de la calle San Francisco le pertenecía a la Iglesia Católica, Apostólica y Romana en Puerto Rico (Arquidiócesis de San Juan).

19. Ququye, Inc. se registró en el Departamento de Estado como una corporación íntima doméstica el 9 de julio de 2018.

20. La Sra. Cruz Soto es la única directora de Ququye, Inc., la cual posee 10 acciones comunes con un valor de $100 para el momento de su registración.

21. La creación de la corporación fue asistida por el contador José A. Albelo Serrano, quien fue contactado para tales fines por la Sra. Soto Martínez. Actualmente, la única integrante de la Junta de Directores de Ququye, Inc. es la Sra. Cruz Soto. Esta figuraba como directora única debido a que la intención original de la Sra. Soto Martínez era que la corporación estuviera bajo su nombre.

22. La Sra. Cruz Soto posee un certificado de acciones de Ququye, Inc., el cual fue generado y emitido meses después de la creación de la corporación. Dicho documento indica que se le otorgaron 10 acciones el 16 de enero de 2019.

23. Ququye, Inc. posee un certificado de registro de comerciante.

24. El 30 de enero de 2021, Ququye, Inc. otorgó un contrato de compraventa mediante escritura pública en relación con el edificio ubicado en el #359 en la calle San Francisco del Viejo San Juan. Mediante dicho instrumento, la corporación adquirió la propiedad de la Arquidiócesis de San Juan. El propósito de la compra del edificio era que las señoras Cruz Soto y Soto Martínez tuvieran un patrimonio a través de la corporación.

25. Ququye, Inc. no ha emitido acciones a favor de la Sra. Soto Martínez por voluntad expresa de esta última. Previo a la compraventa, el edificio estaba sujeto a un contrato de arrendamiento con opción a compra (rent-to-own) otorgado por la corporación Taller Cocuyo, Inc. Dicho negocio jurídico

fue gestionado por la Sra. Soto Martínez; cabe señalar que el Sr. Cruz Soto no figura como firmante en dicho contrato.

26. Ququye, Inc. opera el negocio "Los 3 Cuernos", una barra de chichaitos con sabor establecida hace más de una década. Dichas bebidas fueron creadas por la Sra. Soto Martínez; el Sr. Cruz Soto no tuvo participación en su desarrollo o creación.

27. El Sr. Cruz Soto no ha sido dueño de ninguna de las corporaciones utilizadas para operar el negocio de venta de chichaitos con sabor.

28. Ququye, Inc. mantiene registrados ante el Departamento de Estado tanto el logo como la marca "Los 3 Cuernos" (Chichaitos con sabor)'. El registro fue gestionado por la Sra. Soto Martínez para proteger sus derechos de propiedad intelectual como creadora. Por otra parte, se estipuló que el cincuenta por ciento (50%) del canon de arrendamiento se abonaría al precio de venta del edificio, mientras que la mitad restante constituiría el pago del canon de arrendamiento per se.

29. La Sra. Cruz Soto gestionó personalmente el registro del logo que se exhibe en la fachada del edificio de "Los 3 Cuernos". La titularidad de dicho logo pertenece a Ququye, Inc.

30. Entre los años 2018 y 2021, el Sr. Cruz Soto se desempeñó como gerente y administrador del negocio de chichaitos con sabor, bajo la dirección y propiedad de la Sra. Soto Martínez. En 2021, debido a que la Sra. Soto Martínez debió ausentarse para atender asuntos familiares en la República Dominicana tras el fallecimiento de su madre, el Sr. Cruz Soto asumió el mando del establecimiento. Dicha administración contó con el consentimiento de la Sra. Cruz Soto, quien, no obstante, no participó en la gestión diaria del negocio.

31. Entre los años 2022 y 2023, la Sra. Cruz Soto comenzó a indagar sobre el estatus del negocio ante respuestas que le resultaban sospechosas. Según indicó, no había documentos financieros disponibles para su revisión y sus llamadas no eran devueltas. Para ella, la conducta del Sr. Cruz Soto reflejaba una intención de apropiarse de la corporación. El Sr. Cruz Soto no solo obstaculizó las solicitudes económicas de la Sra. Soto Martínez, negándole una asignación fija bajo el pretexto de insolvencia corporativa, sino que también ignoró los pedidos de información sobre gastos realizados por la Sra. Cruz Soto. Incluso los profesionales externos de la empresa ignoraban sus gestiones, lo que la obligó a contactar directamente al contador, el Sr. Albelo, debido a que el administrador se desligaba de su responsabilidad de proveer datos financieros. Finalmente, la Sra. Cruz Soto señaló haber recibido notificaciones del gobierno sobre documentos radicados que nunca pasaron por su revisión.

32. La Sra. Cruz Soto no figura como firma autorizada en la cuenta bancaria de Ququye, Inc. De este hecho se percató tras notar la conducta sospechosa del Sr. Cruz Soto.

33. Para el periodo comprendido entre 2021 y 2025, el acuerdo alcanzado entre las señoras Cruz Soto y Soto Martínez era que el Sr. Cruz Soto sería el encargado de la operación del negocio ("correr el negocio") a cambio de un salario.

34. En el informe anual de Ququye, Inc. correspondiente al año 2023, la Sra. Cruz Soto figura como presidenta, secretaria y tesorera, mientras que el Sr. Cruz Soto no aparece ostentando posición alguna. Dicho informe fue radicado por el contador Albelo quien, al ser cuestionado por la Sra. Cruz Soto, manifestó que la información contenida en el documento fue suministrada exclusivamente por el Sr. Cruz Soto.

35. Entre los años 2020 y 2025, tanto los informes anuales como las planillas de contribución sobre ingresos se radicaron sin la autorización ni el visto bueno de la Sra. Cruz Soto.

36. La Sra. Cruz Soto carece de acceso a las cuentas bancarias de Ququye, Inc. Los estados financieros reflejan que la cuenta no ha tenido saldo durante varios meses previos a octubre de 2025; no obstante, anteriormente dicha cuenta tenía un balance de $100,000.

37. El Sr. Cruz Soto se comprometió con el Banco Popular de Puerto Rico a pagar unas mensualidades por el arrendamiento de un vehículo de motor marca Mercedes Benz, modelo GLC63, del año 2021. Dicha obligación requiere un pago mensual aproximado de $2,000.

38. La Sra. Soto Martínez era la propietaria de Taller Cocuyo, Inc. Por disposición de esta última, tanto el Sr. Cruz Soto como la Sra. Cruz Soto se desempeñaban como copresidentes de la Junta de Directores de la corporación.

39. La corporación Taller Cocuyo, Inc. se organizó bajo las leyes de Puerto Rico el 14 de junio de 2012.

40. El 28 de octubre de 2016, la corporación Taller Cocuyo, Inc. fue cancelada por el Departamento de Estado de Puerto Rico.

41. La corporación Martínez Reina, Inc. se organizó bajo las leyes de Puerto Rico el 11 de octubre de 2013.

42. El 16 de octubre de 2015, la corporación Martínez Reina, Inc. fue cancelada por el Departamento de Estado de Puerto Rico.

43. El Sr. Cruz Soto, quien integraba la junta de directores de Martínez Reina, Inc., no formó parte en la junta de directores de Ququye, Inc.

44. La corporación Martínez Reina Inc. fue restaurada el 8 de abril de 2016.

45. La corporación Martínez Reina, Inc. fue cancelada nuevamente el 31 de diciembre de 2019, debido a que la entidad ya no se encontraba en operaciones.

46. La Sra. Cruz Soto —utilizando su corporación Cruise Control Agency LLC— realizó un pago de $15,000 (cheque núm. 1053) y otro de $30,000 (cheque núm. 1081) a la Arquidiócesis de San Juan como pronto pago para la compraventa del edificio ubicado en el #359 de la calle San Francisco, en el Viejo San Juan.

47. La Sra. Cruz Soto también le envió —en el año 2021— la cantidad de $46,000 a su hermano, el Sr. Cruz Soto, mediante transferencia bancaria (wire transfer) para la

compra del edificio ubicado en el número 359 de la calle San Francisco, en el Viejo San Juan.

48. Tras confrontar a su hermano —el Sr. Cruz Soto—, la Sra. Cruz Soto advino en conocimiento de que Ququye, Inc. arrastraba deudas por mercancía, servicios, seguros y contribuciones, además de irregularidades con el servicio de agua. Al momento de descubrir estas obligaciones, la corporación contaba con balance suficiente en su cuenta bancaria; no obstante, al presente, carece de fondos para cubrir dichas deudas. Ante esta situación, el Departamento de Hacienda ha advertido sobre el inicio de medidas civiles o de cualquier otra naturaleza —Procedimiento de Apremio— si no se liquidan las duedas contributivos.

49. La corporación también tiene deudas con el Departamento del Trabajo del Gobierno de Puerto Rico (desempleo e incapacidad) que datan del 2021. Las deudas son $21,721.67 por concepto de desempleo y $2,606.90 por concepto de incapacidad.

50. La Sra. Cruz Soto acudió a la Autoridad de Acueductos y Alcantarillados (AAA) para atender las deudas de Ququye, Inc. Allí se le informó que la propiedad nunca ha contado con un medidor (contador). Fue referida a la Oficina de Reducción de Agua No Facturada (ORANF), donde se le notificó que Ququye, Inc. había sido multada en varias ocasiones debido a la existencia de una conexión ilegal (pillo). Esta irregularidad persistió por un periodo aproximado de cuatro años, tiempo durante el cual también se le facturó a la corporación por el consumo de agua. Para el 12 de diciembre de 2024, la deuda ascendía a $41,639.61.

51. Respecto a las deudas con los suplidores, el Sr. Cruz Soto instruye a los proveedores de mercancía a contactar a la Sra. Cruz Soto, indicando que dichas obligaciones le corresponden a ella.

52. Ququye, Inc. tenía cuenta de banco con el Banco Popular de Puerto Rico.

53. El inmueble donde opera Los 3 Cuernos cuenta con dos espacios comerciales: uno destinado al propio negocio y otro arrendado a un establecimiento de café —Alfredo Hannibal. Debido a una conexión ilegal en el servicio de agua, el inquilino de Ququye, Inc. ha cesado el pago del canon de arrendamiento.

54. La Sra. Cruz Soto no tiene acceso al negocio Los Tres Cuernos, toda vez que el Sr. Cruz Soto no se lo permite.

55. Los Tres Cuernos estaban operando en el #359 de la Calle San Francisco desde aproximadamente el año 2014. Desde el 9 de julio de 2018, el negocio operó bajo la entidad jurídica Ququye, Inc.

56. Una vez que la Sra. Soto Martínez viajó a la República Dominicana para atender los asuntos relacionados con el fallecimiento de su madre a finales del año 2021, se acordó con el Sr. Cruz Soto que este se hiciera cargo —en calidad de gerente— del negocio Los Tres Cuernos.

57. A principios de enero de 2025, la Sra. Cruz Soto presentó una resolución corporativa estipulando que las únicas personas autorizadas para actuar en representación de

Ququye, Inc. —ante la Autoridad de Acueductos y Alcantarillados (AAA)— son ella y sus representantes legales.

58. La Sra. Cruz Soto procedió con la apertura de una cuenta bancaria corporativa en First Bank —destinada al depósito de los cánones de arrendamiento a favor de Ququye, Inc.—, la cual se encuentra activa al menos desde el 1 de noviembre de 2024.

59. Al 14 de enero de 2025, la Sra. Cruz Soto advino en conocimiento de las deudas de Ququye, Inc. con el Departamento de Hacienda tras acudir a dicha agencia en busca de información y orientación sobre el estatus contributivo de la entidad.

60. Desde el año 2018, las personas que tenían acceso a SURI eran el contador Albelo, el Sr. Cruz Soto y el Sr. Marcos Martínez[11].

Evaluada la prueba documental[12] y la totalidad de las circunstancias, el foro recurrido declaró *Ha Lugar* la solicitud de remedios provisionales y le ordenó al señor Cruz Soto:

> *[Q]ue desista de tomar cualquier acción con relación a Ququye, Inc. y el negocio Los 3 Cuernos sin antes obtener el consentimiento por escrito —mediante carta, correo electrónico o mensajería de texto— de la Sra. Cruz Soto. Se le ordena que, en el término máximo de 72 horas a partir de la notificación de esta resolución y del pago de la fianza, permita acceso irrestricto a la Sra. Cruz Soto a todas las cuentas bancarias de Ququye, Inc. y al edificio ubicado en el número 359 de la calle San Francisco, en el Viejo San Juan. También permitirá acceso irrestricto a cualquier otra cuenta perteneciente o relacionada con Ququye, Inc. y Los 3 Cuernos[13].*

Inconforme, el 26 de enero de 2026, el peticionario presentó reconsideración del referido dictamen[14]. Luego de que el recurrido presentara su oposición[15] y el señor Cruz Soto sometiera una réplica[16], el 29 de enero de 2026[17], el TPI emitió una *Orden* en la cual declaró *Sin Lugar* la reconsideración del peticionario.

Insatisfecho aun, el 8 de febrero de 2026, el señor Cruz Soto acudió a este foro intermedio y le imputó al foro recurrido los siguientes señalamientos de error:

> ERRÓ EL TPI Y ABUSÓ DE SU DISCRECIÓN AL EMITIR UNA RESOLUCIÓN AL AMPARO DE LA REGLA 56 DE PROCEDIMIENTO CIVIL QUE, EXCEDIENDO EL

---

[11] *Íd.*, págs. 1-7.
[12] *Íd.*, págs. 7-9.
[13] *Íd.*, pág. 11.
[14] Véase, Anejo 250 del recurso de *Certiorari, Moción al Amparo de la Regla 47 de Procedimiento Civil [Entrada Núm. 228].*
[15] Anejo 251 del recurso de *Certiorari.*
[16] Anejo 252 del recurso de *Certiorari.*
[17] Notificada el 30 de enero de 2026.

CARÁCTER ESTRICTAMENTE PROVISIONAL Y CONSERVADOR DE DICHO MECANISMO CAUTELAR, FORMULÓ EXTENSAS DETERMINACIONES DE HECHOS, VALORACIONES DE CREDIBILIDAD Y CONCLUSIONES SUSTANTIVAS QUE, EN LA PRÁCTICA, CONSTITUYEN UNA ADJUDICACIÓN ANTICIPADA DE CONTROVERSIAS MEDULARES AÚN NO RESUELTAS EN LOS MÉRITOS.

ERRÓ EL TPI RECURRIDO AL UTILIZAR UNA VISTA CAUTELAR —CELEBRADA SIN DESCUBRIMIENTO DE PRUEBA COMPLETO, SIN PERITAJE FINANCIERO O CONTABLE Y SIN UN RÉCORD PROBATORIO PLENAMENTE DESARROLLADO— COMO SUSTITUTO FUNCIONAL DE UN JUICIO EN LOS MÉRITOS, FIJANDO UNA NARRATIVA FÁCTICA ESTRUCTURAL QUE CONDICIONA EL RESTO DEL LITIGIO Y PRIVA A LA PETICIONARIA DE SU DERECHO A UN PROCESO ADVERSATIVO PLENO Y A UN DEBIDO PROCESO DE LEY.

ERRÓ EL TRIBUNAL RECURRIDO AL CONCEDER REMEDIOS PROVISIONALES QUE NO PRESERVAN EL *STATU QUO*, SINO QUE LO ALTERAN SUSTANCIALMENTE, IMPONIENDO RESTRICCIONES OPERACIONALES Y TRANSFIRIENDO DE FACTO EL CONTROL Y MANEJO DE LA CORPORACIÓN QUQUYE, INC. A LA PARTE DEMANDANTE, EN CONTRAVENCIÓN DIRECTA CON LA FINALIDAD Y LÍMITES DE LA REGLA 56 DE PROCEDIMIENTO CIVIL.

Por su parte, el 15 de febrero de 2026, el recurrido presentó su *Oposición a que se Expida Auto de Certiorari y en Oposición a Moción de Auxilio de Jurisdicción*. Allí, adujo que el TPI actuó dentro de su discreción y bajo el mandato imperativo de la Regla 56 de las de Procedimiento Civil, *supra*, para salvaguardar el patrimonio de Ququyé. Asimismo, arguyó que la determinación recurrida no fue un acto de arbitrariedad, sino el resultado de un proceso justo y una vista evidenciaria rigurosa donde se garantizó el debido proceso de ley y se fundamentó en prueba documental y testifical contundente.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

Examinados detenidamente los expedientes ante nuestra consideración y ante la discreción limitada que nos reconoce la Regla 52.1 de Procedimiento Civil, *supra*, y de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra*, no identificamos razón por la cual este Foro deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que

nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios en los que el foro de primera instancia haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. También, debemos recordar que las determinaciones del foro primario merecen respeto y deferencia, ya que este es quien mejor conoce las interioridades del caso y es quien está en mejor posición para tomar las decisiones correctas sobre las controversias planteadas.

En síntesis, resolvemos que en los recursos que aquí atendemos no se demostró que la actuación del foro primario haya sido errónea o arbitraria. De conformidad con lo anteriormente esbozado, **denegamos** los recursos de *Certiorari* presentados y ordenamos la continuación de los procedimientos ante el Tribunal de Primera Instancia, Sala Superior de San Juan[18].

**Notifíquese inmediatamente**.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[18] A tenor con lo dispuesto en la Regla 35 (A) (1) del Reglamento del Tribunal de Apelaciones, el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin necesidad de tener que esperar por nuestro mandato. Regla 35 (A)(1) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, pág. 58, 216 DPR __ (2025).